Mark A. Nickel (14082)
Zachary A. Bloomer (16353)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W South Temple, Suite 1600
Salt Lake City, UT 84101
Telephone: (801) 204-9990
Facsimile: (385) 282-7590
mnickel@grsm.com
zbloomer@grsm.com
*Attorneys for Ace American Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HIREVUE, INC.,<br><br>Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No.: 2:24-cv-102<br><br>Judge |

NOW COMES the Plaintiff, ACE American Insurance Company ("ACE"), by and through its attorneys, Mark A. Nickel and Zachary A. Bloomer with Gordon Rees Scully Mansukhani, LLP, with its Complaint for Declaratory Judgment against the Defendant, HireVue, Inc. ("HireVue"), hereby states as follows:

1. This action seeks a declaration, pursuant to 28 U.S.C. § 2201, that ACE owes no defense or indemnity obligations to HireVue with respect to the lawsuit captioned *Kristen Deyerler et al. v. HireVue, Inc.*, Case No. 22-cv-01284 (N.D.IL.) (the "Deyerler Lawsuit") under the terms of its Chubb DigiTech® Enterprise Risk Management Policy No. D95582187 (the "Policy") issued

to HireVue for the **Policy Period**[1] of September 1, 2021 to September 1, 2022.

## THE PARTIES

2.  ACE is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and is in the business of providing liability insurance.

3.  Upon information and belief, defendant, HireVue is incorporated under the laws of the State of Delaware with its principal place of business in Utah.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest, based on HireVue's claim for coverage for the defense of, as well as sums sought in the Deyerler Lawsuit.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the case concerns coverage under an insurance policy issued in this District, concerning claims pending against a putative insured within the geographical boundaries of this District.

## FACTS

**The Deyerler Lawsuit**

6.  On January 27, 2022, Kristen Deyerler filed the Deyerler Lawsuit, a putative class action in Illinois State Court, against HireVue. The Lawsuit was removed to the Northern District of Illinois and assigned Civil Action No. 1:22-cv-01284. The operative Complaint in the Deyerler Lawsuit is the First Amended Complaint ("FAC"). The FAC is attached as Exhibit 1.

7.  In the FAC, Ms. Deyerler alleges that HireVue "is a hiring service company" that

---

[1] Words appearing in bold are defined terms under the Policy. A copy of the Policy is attached as Exhibit 2.

2

assesses "job applicants' qualifications" for its clients. Ex. 1 at ¶ 2. It is further alleged that HireVue performs this service through an "online 'video interview' platform powered by algorithmic 'assessment' software." *Id*. According to the FAC, in its use of this software, HireVue, is "capturing, collecting, disseminating, or otherwise using the biometrics of [Ms. Deyerler] and other Class members, without their informed written consent as required by law." *Id*.

8.      It is alleged that HireVue's software extracts job applicants' "facial geometry," which is a biometric within the meaning of the Illinois Biometric Information Privacy Act ("BIPA"). *Id*. at ¶ 5. The FAC further asserts that in doing this HireVue violated BIPA by failing to: a) inform the job applicants that their biometrics were being collected or otherwise obtained; b) obtain the written consent of those job applicants prior to collecting or obtaining their biometric information; and c) make publicly available any biometric retention policy that disclosed how long HireVue stored the biometrics it collected. *Id*. at ¶¶ 24-25.

9.      The FAC asserts one count against HireVue on behalf of Ms. Deyerler as well as a class of "[a]ll individuals whose biometrics were captured, collected, received through trade, or otherwise obtained through Defendant's video interview software within the state of Illinois any time within the applicable limitations period." *Id*. at ¶ 61. The FAC's sole count against HireVue asserts a claim for "Violations of the Illinois Biometric Information Privacy Act." *Id*. ¶¶ 69-81.

10.     Because the Illinois BIPA statute has a five-year statute of limitations, the putative class members of the Deyerler Lawsuit include individuals who interviewed with HireVue as early as 2017.

**HireVue Submits The Deyerler Lawsuit For Coverage Under The Policy**

11.     Once served with the Complaint, HireVue, an **Insured** under the Policy, tendered the Deyerler Lawsuit to ACE for coverage under the Policy.

12. The Policy has $5 million per **Claim** limit of liability and is subject to a $100,000 per **Claim** retention under Insuring Agreement E. Ex. 2 at Item 4.E. of Declarations. The Policy also provides for a duty to defend any covered **Claim** brought against the **Insured**. *Id.* at Section IX.A.

13. Insuring Agreement E, Cyber, Privacy and Network Security Liability, is the relevant Insuring Agreement at issue in this matter. That Insuring Agreement provides, in relevant part, coverage "for **Damages** and **Claim Expenses** by reason of a **Claim** first made against an **Insured** during the **Policy Period** for a **Cyber Incident** which first occurs on or after the **Retroactive Date** [January 1, 2004] and prior to the end of the **Policy Period** [September 1, 2022]." *Id.* at Insuring Agreement E.

14. With respect to Insuring Agreement E, **Cyber Incident** is defined to mean any "error, misstatement, misleading statement, act, omission, neglect, breach of duty, or other offense actually or allegedly committed or attempted by any **Insured** in their capacity as such, resulting in or based upon a **Cyber Incident** as referenced in paragraphs 1-4 immediately above." *Id.* at Section II.

15. Paragraphs "1-4 immediately above," include subsection 1(b) – "any actual or reasonably suspected failure by an **Insured**, . . . to properly handle, manage, store, destroy, protect, use, or otherwise control **Protected Information**"—and subsection 1(c) – "any unintentional violation by an **Insured** of any **Privacy or Cyber Law**, including the unintentional wrongful collection of **Protected Information** by an **Insured**." *Id.*

16. The Policy defines **Protected Information**, in relevant part, to include "personally identifiable photos," and "biometric records." *Id.*

17. The Policy defines **Privacy or Cyber Laws** to mean "any local, state, federal,

4

and foreign identity theft and privacy protection laws, legislation, statutes, or regulations that require commercial entities that collect **Protected Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Protected Information** has potentially been compromised." *Id.*

**The Duty To Defend**

18. The Policy provides ACE with the right and duty to defend any covered **Claim** brought against an **Insured** even if such **Claim** is groundless, false, or fraudulent. *Id.* at Section IX.A. That Section also provides that ACE retains the right to appoint counsel and that no **Insured** shall incur any **Claims Expenses** or otherwise assume any contractual obligation without the Company's written consent, which shall not be unreasonably withheld. *Id.*

**The Policy's Prior and Pending Exclusion**

19. Subject to the Policy's other terms, conditions, exclusions, and endorsements, the Policy further contains the following exclusion:

> The Pending Or Prior Proceedings Exclusion
>
> [ACE] shall not be liable for **Costs, Damages**, or **Claims Expenses** on account of any **Incident** or any **Claim** alleging, based upon, arising out of, or attributable to:
>
> (a) any pending or prior litigation, **Claim**, written demand, arbitration, administrative or regulatory proceeding, or administrative or regulatory investigation filed or commenced against an **Insured** on or before the applicable Pending or Prior Proceedings Date shown in Item 6 of the Declarations ["09-01-2020"], or alleging or derived from the same or substantially the same fact, circumstance, or situation underlying or alleged therein; or
>
> (b) any other **Incident** whenever occurring which, together with an **Incident** underlying or alleged in any pending or prior litigation, **Claim,** written demand, arbitration, administrative or regulatory proceeding, or administrative or regulatory investigation as set forth pursuant to paragraph a. immediately above, would constitute **Interrelated Incidents**. *Id*. at Section III.A.3.

5

**ACE's Response To Notice And Its Investigation**

20.     On May 16, 2022, after receiving notice of this matter, ACE accepted the defense of the Deyerler Lawsuit subject to a full reservation of all rights and defenses. The May 16, 2022 reservation of rights letter is attached as Exhibit 3.

21.     Because HireVue had already retained Gerald Maatman of the law firm Seyfarth Shaw as defense counsel, ACE advised HireVue that it would not object to that firm's retention subject to HireVue's acceptance of ACE's panel counsel rate limitations. *Id.* at p.2.

22.     In its May 16, 2022 letter, ACE also expressly reserved its rights to continue its investigation and affirmatively requested various categories of information relevant to the **Claim** and the technology at issue in the Deyerler Lawsuit. *Id.*

23.     On February 28, 2023, ACE was advised by an excess layer insurer that a Federal Trade Commission ("FTC") Complaint had been filed against HireVue on November 6, 2019, seemingly involving the same technology that is at issue in the Deyerler Lawsuit.

24.     On March 15, 2023, the excess layer insurer sent an email to HireVue that copied ACE. The email advised HireVue of the following:

> We have learned that, on or about November 6, 2019, the Electronic Privacy Information Center (EPIC) submitted a 'Complaint and Request for Investigation, Injunction and Other Relief' to the Federal Trade Commission ('FTC') with respect to HireVue, Inc.'s online hiring platform, which EPIC alleged evaluates a job applicant's qualifications based upon their appearance by means of an opaque, proprietary algorithm ('EPIC's Complaint'). In furtherance of [the excess layer's] coverage investigation, please provide us the following information:
>
> 1. All communications between HireVue (or its representatives) and the FTC relating to EPIC's Complaint.
> 2. All communications between HireVue (or its representatives) and the FTC relating to the technology that is the subject of EPIC's Complaint.

6

       3.   All communications between HireVue (or its representatives) and EPIC relating to EPIC's Complaint

       4.   All communications between HireVue (or its representatives) and EPIC relating to the technology that is the subject of EPIC's Complaint.

       5.   All non-privileged internal HireVue communications relating to EPIC's Complaint and/or any potential measures to be taken in response to it.

The email chain containing HireVue's March 15, 2023 email is attached as Exhibit 4.

      25.    On March 29, 2023, ACE sent an email to HireVue joining the excess layer insurer's requests for "documents and information relating to the November 6, 2019 [FTC/EPIC] Complaint and Request for Investigation." ACE also expressly reserved its right to supplement its May 16, 2022 coverage position upon review of the requested materials. Exhibit 4 at pp. 5-6.

      26.    Later on March 29, 2023, the Insured's general counsel responded by stating it was "unclear . . . how the EPIC complaint would have anything to do with the [Deyerler] BIPA lawsuit." She also advised that she was "[h]appy to answer questions but conflating these two doesn't appear to be appropriate." *Id.* at pp 4-5.

      27.    On March 31, 2023, counsel for the excess layer insurer renewed its request for information as part of its investigation into "exclusions relat[ing] to prior known circumstances that could give rise to future claims." *Id.* at pp. 3-4.

      28.    On April 4, 2023, the Insured's broker sent an email to both ACE and the excess layer insurer, stating in relevant part, the following:

> We have reviewed your request from March 15 and are concerned that Chubb/[excess layer insurer] appear to be attempting to reference an unrelated and settled matter while considering the new and unrelated BIPA claim. EPIC's 2019 complaint to the FTC was made to take advantage of excitement and fears related to facial analysis technology. EPIC created as much publicity as possible regarding the issue; however, the FTC reviewed the matter with HireVue and concluded that No Action would be taken at that time.

> BIPA is a completely separate matter, and though the allegations use similar wording to the EPIC/FTC matter, no reference to EPIC or the FTC matters (read: 'Incident') of 2019 are made in the BIPA claim. Therefore, the BIPA 'Incident' must be considered for coverage without 'prior knowledge' reservations from the 2019 EPIC/FTC matter, as these would only apply to potential future FTC claims. *Id.* at p.3.

29. On April 4, 2023, Chubb responded, stating the following:

> [I]t appears that the technology at issue in the November 2019 FTC Complaint is the same technology at issue in the *Deyerler et al.* BIPA class action lawsuit. Chubb, on behalf of ACE American Insurance Company (collectively 'the Company'), is obligated to investigate the interrelatedness of the allegations in those two matters under the Policy, given this is the first we have learned of the 2019 FTC Complaint. It does not appear that the Company was notified of the FTC matter in any of the applications for coverage with the Company completed by HireVue. *Id.* at pp. 1-2.

30. On June 22, 2023, the Insured's general counsel sent copies of both: a) the EPIC Complaint and Request for Investigation, Injunction, and Other Relief (the "EPIC Complaint"), which had been filed with the FTC on November 6, 2019; and b) the FTC's Civil Investigative Demand (the "FTC Investigation") dated January 17, 2020, which was based on the allegations in the EPIC Complaint. The June 22, 2023 Letter, with the enclosed EPIC Complaint and FTC Investigation, are attached as Exhibit 5.

**The EPIC Complaint**

31. On November 6, 2019, EPIC filed a Complaint with the FTC, alleging that HireVue collected and analyzed facial expressions and facial movements to measure job candidates' cognitive ability, emotional intelligence, and social aptitudes, even while simultaneously claiming that it did not use facial recognition technology. Ex. 5 at Ex. A. ¶¶ 50-60.

32. The EPIC Complaint also contended that "[b]ecause these algorithms are secret – even to HireVue itself, in some cases – it is impossible for job candidates to know how their personal data is being used or to consent to such uses. *Id.* ¶ 77.

8

33. EPIC alleged that HireVue's "intrusive collection and secret analysis of biometric data" caused substantial privacy and financial harms to job candidates. *Id.* ¶¶ 78-79.

34. As part of its Complaint, EPIC requested that the FTC begin an investigation into HireVue's business practices; halt the scoring of job candidates "pending substantial changes;" require that HireVue comply with general AI [artificial intelligence] principles; make HireVue publicly release the algorithm used to produce assessments; and inform candidates of the precise basis for their evaluation. *Id.* ¶ 85.

**The FTC Investigation**

35. On or about January 14, 2020, the FTC issued the FTC Investigation to HireVue, which requested, among other things, the sources of data used in its job interview assessments, the manner in which that data was analyzed, the manner in which it was provided to end users, a detailed description of the evaluation of facial expressions, the manner in which the evaluations were used, and all information regarding HireVue's claims that its assessments resulted in accurate predictions together with evidence supporting those claims. Ex. 5 at Ex. B ¶¶ 18-38.

36. On or about April 2020, HireVue decided to "remove visual analysis from [its] new assessment models."[2] When it ultimately disclosed this decision to the public, HireVue stated that its research revealed that "visual analysis has far less correlation to job performance than other elements of our algorithmic assessment. . . For that reason, we made the decision to not use any visual analysis in our pre-hire algorithms going forward."[3]

---

[2] **Error! Hyperlink reference not valid.**https://www.hirevue.com/blog/hiring/industry-leadership-new-audit-results-and-decision-on-visual-analysis. In April and May 2020, HireVue engaged O'Neil Risk Consulting & Algorithmic Auditing (ORCAA) to conduct an algorithmic audit of a subset of HireVue's pre-built assessments and that assessment (published in December 2020) noted that HireVue had determined to phase out facial analysis prior to the commencement of the ORCAA audit. https://techinquiry.org/HireVue-ORCAA.pdf.
[3] https://www.hirevue.com/blog/hiring/industry-leadership-new-audit-results-and-decision-on-visual-analysis.

37. On October 30, 2020 – approximately seven months after HireVue had decided to discontinue facial analysis – the FTC advised HireVue that it had "decided not to recommend any enforcement action at this time," although the "decision not to pursue enforcement should not be construed as a determination that a violation did not occur." Ex. 5 at Ex. C.

## COUNT ONE
## SUBPARAGRAPH a. OF
## THE PENDING OR PRIOR PROCEEDINGS
## EXCLUSION HAS BEEN TRIGGERED

38. ACE incorporates and restates the allegations of Paragraph 1 through 37 above as if fully set forth herein.

39. Insuring Agreement E states, in pertinent part, that ACE will pay **Damages** and **Claims Expenses** because of a **Claim** first made against an **Insured** during the **Policy Period**. Exhibit 2 at Section I.E.

40. Subparagraph a. of the Pending or Prior Proceedings Exclusion applies to preclude coverage when: a) the **Claim** at issue alleges, is based upon, arises out of, or is attributable to any: "prior litigation, **Claim**, written demand . . . or regulatory investigation," filed or commenced before September 1, 2020; or b) when the **Claim** at issue alleges or is derived from "the same or substantially the same fact, circumstance, or situation underlying or alleged" in such prior litigation, **Claim,** written demand or regulatory proceeding. Exhibit 2 at Section III.A.3.a. and b.

41. The EPIC Complaint was filed and the FTC Investigation issued prior to the September 1, 2020 Pending or Prior Proceeding date set forth in Item 6 of the Policy's Declarations.

42. The EPIC Complaint, FTC Investigation, and Deyerler Lawsuit on their face allege or are derived from the same or substantially the same facts, circumstances, or situation conduct: namely, HireVue's collection and use of job applicant's biometrics – specifically, facial

expressions and features – without obtaining the job applicants' proper consent.

43. As recounted above, HireVue began phasing out its facial analysis in the spring of 2020. Thus, HireVue's cessation of facial analysis in May 2020 makes especially clear that many of the individuals within the scope of the EPIC Complaint, FTC Investigation, and the *Deyerler* Lawsuit are *exactly* the same.

44. Because the Deyerler Lawsuit and FTC Investigation each commenced before September 1, 2020, and because each alleges, is based upon, arises of, or is attributable to "the same or substantially the same fact, circumstance or situation as the Deyerler Lawsuit, the Pending or Prior Proceedings Exclusion bars coverage for the Deyerler Lawsuit. Exhibit 2 at Section III.3.a.

## COUNT TWO
## SUBPARAGRAPH b. OF THE
## PENDING OR PRIOR PROCEEDINGS
## EXCLUSION HAS BEEN TRIGGERED

45. ACE incorporates and restates the allegations of Paragraph 1 through 44 above as if fully set forth herein.

46. Subparagraph b. of the Pending or Prior Proceedings Exclusion precludes coverage when the **Claim** at issue is "based upon, arises out of, or is attributable to any **Incident**, whenever occurring, which together with an **Incident** underlying or alleged in any pending or prior litigation, **Claim**, written demand . . . or regulatory investigation" as set forth pursuant to paragraph a. would constitute **Interrelated Incidents**. Exhibit 2 at Section III.A.3.b.

47. The Policy defines **Incident** to include a **Cyber Incident**. *Id.* at Section II.

48. With respect to Insuring Agreement E, **Cyber Incident** is defined to include any ". . . act, omission, neglect, breach of duty, or other offense actually or allegedly committed or attempted by any **Insured** in their capacity as such, resulting in or based upon a **Cyber Incident** as referenced in paragraphs 1-4 immediately above." *Id.* at Section II.

49. Paragraphs "1-4 immediately above," include subsection 1(b) – "any actual or reasonably suspected failure by an **Insured**, . . . to properly handle, manage, store, destroy, protect, use, or otherwise control **Protected Information**" – and subsection 1(c) – "any unintentional violation by an **Insured** of any **Privacy or Cyber Law**, including the unintentional wrongful collection of **Protected Information** by an **Insured**." *Id.*

50. The Policy defines **Interrelated Incidents** to mean "all **Incidents** that have as a common nexus any act, fact, circumstance, situation, event, transaction, cause, or series of related acts, facts, circumstances, situations, events, transactions, or causes." *Id.*

51. Here, the Deyerler Lawsuit is based upon, arises out of, or is attributable to an **Incident** which, together with the **Incident or Incidents** underlying or alleged in the EPIC Complaint and FTC Investigation, constitute the same **Incident** or **Interrelated Incidents**.

52. The EPIC Complaint, FTC Investigation, and Deyerler Lawsuit each allege and/or are based HireVue's "actual or reasonably suspected failure . . . to properly handle, manage, store, destroy, protect, use, or otherwise control **Protected Information**;" and/or HireVue's "unintentional violation of any **Privacy or Cyber Law**, including the unintentional wrongful collection of **Protected Information** by [HireVue]." *Id.*

53. Because: a) the **Incident** underlying and/or alleged in the Deyerler Lawsuit, is the same **Incident** or is an **Interrelated Incident** to the **Incident** or **Incidents** underlying the EPIC Complaint and/or FTC Investigation; and b) because the **Incidents** upon which the EPIC Complaint and FTC Investigation are based, occurred prior to September 1, 2020, the Pending and Prior Proceedings Exclusion bars coverage for the **Claim**.

## **PRAYER FOR RELIEF**

WHEREFORE, ACE respectfully requests that this Court enter judgment against HireVue

declaring that ACE owes no duty to defend or indemnify HireVue in connection with the Deyerler Lawsuit, and that ACE be awarded the following relief:

1) As to Count ONE, a declaration that subparagraph a. of the Policy's Pending or Prior Proceedings Exclusion bars coverage for the Deyerler Lawsuit;

2) As to Count TWO, a declaration that subparagraph b. of the Policy's Pending or Prior Proceedings Exclusion bars coverage for the Deyerler Lawsuit; and

3) Such additional relief as the Court deems appropriate.

## JURY DEMAND

ACE, by and through undersigned counsel, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all triable issues.

DATED this 6th day of February 2024.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Zachary A. Bloomer*
Mark A. Nickel
Zachary A. Bloomer

*Attorneys for Ace American Insurance Company*