Brent O. Hatch (5715)
Tyler V. Snow (12668)
HATCH LAW GROUP PC
22 East 100 South, Suite 400
Salt Lake City, UT 84111
Tel: (801) 869-1919
hatch@hatchpc.com
snow@hatchpc.com

*Counsel for Defendant HireVue, Inc.*

Jeffrey S. Raskin*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
jeffrey.raskin@morganlewis.com

* Denotes national counsel who will seek pro hac vice admission

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> HIREVUE, INC., <br><br> Defendant/Counterclaim Plaintiff. | **ANSWER AND COUNTER CLAIM** <br><br> JURY TRIAL DEMANDED <br><br> Case No. 2:24-cv-102-HCN-DBP <br><br> Judge Howard C. Nielson, Jr <br><br> Magistrate Judge Dustin B. Pead |

### HIREVUE, INC.'S ANSWER TO ACE AMERICAN INSURANCE COMPANY, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS AGAINST ACE AMERICAN INSURANCE COMPANY

Defendant HireVue, Inc. ("HireVue"), by and through undersigned counsel, answers and responds to Plaintiff ACE American Insurance Company's ("ACE") Complaint for Declaratory Judgment as follows:

1.     HireVue admits that ACE brought this action for a judicial declaration of rights and obligations with respect to the Deyerler Lawsuit under the Chubb DigiTech® Enterprise Risk Management Policy No. D95582187 (the "Policy") that ACE sold to HireVue for the Policy Period

of September 1, 2021 to September 1, 2022. HireVue denies, however, that ACE is entitled to any relief. HireVue denies all other allegations not expressly admitted herein.

## THE PARTIES[1]

2.      Admitted.

3.      Admitted.

## JURISDICTION AND VENUE

4.      Admitted.

5.      Admitted.

## FACTS

### The Deyerler Lawsuit

6.      HireVue admits that, on January 27, 2022, a putative class action was filed against HireVue in Illinois State Court and that Kristen Deyerler was a named plaintiff. HireVue admits that the Deyerler Lawsuit was removed to the Northern District of Illinois and assigned Civil Action No. 1:22-cv-01284. HireVue admits that a First Amended Complaint ("FAC") was filed in the Deyerler Lawsuit, and a motion to dismiss the FAC was formerly pending. HireVue denies all other allegations not expressly admitted herein.

7.      HireVue admits only that ACE selectively quotes from and characterizes the allegations in the FAC in the Deyerler Lawsuit. HireVue denies that ACE accurately characterizes

---

[1] HireVue repeats the headings contained in the Complaint merely for clarity and convenience. To the extent that the titles, headings and subheadings of the Complaint are intended to be allegations directed to HireVue, they are, unless otherwise admitted, denied.

all allegations in the FAC.  HireVue further states that the FAC in the Deyerler Lawsuit speaks for itself and that HireVue denies the allegations in the FAC.

8.      HireVue admits only that ACE selectively quotes from and characterizes the allegations in the FAC in the Deyerler Lawsuit. HireVue denies that ACE accurately characterizes the allegations in the FAC.  HireVue further states that the FAC in the Deyerler Lawsuit speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and HireVue refers to the FAC itself for the allegations contained therein.

9.      HireVue admits that ACE selectively quotes from and characterizes the allegations in the FAC in the Deyerler Lawsuit and that the FAC asserts Count I, "Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (On behalf of Plaintiffs and the Class)." HireVue denies that ACE accurately characterizes the allegations in the FAC.  HireVue further states that the FAC in the Deyerler Lawsuit speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and HireVue refers to the FAC itself for the allegations contained therein.

10.      HireVue admits only that the FAC in the Deyerler Lawsuit defines the Class as "[a]ll individuals whose biometrics were captured, collected, received through trade, or otherwise obtained through Defendant's video interview software within the state of Illinois any time within the applicable limitations period."  HireVue denies that ACE accurately describes the putative class members of the Deyerler Lawsuit, or the allegations in the FAC.  HireVue lacks sufficient information to admit or deny the strategy or reasoning behind the plaintiffs' allegations in the Deyerler Lawsuit and, therefore, denies the allegations in paragraph 10.  HireVue further states that the FAC in the Deyerler Lawsuit speaks for itself, that HireVue denies any allegations that are

inconsistent therewith, and that HireVue refers to the FAC itself for the allegations contained therein.

**HireVue Submits The Deyerler Lawsuit For Coverage Under The Policy**

11. Admitted.

12. HireVue admits that the Policy has a $5 million per **Claim** limit of liability and is subject to a $100,000 per **Claim** retention under Insuring Agreement E. Ex. 2 at Item 4.E. of Declarations. HireVue denies that the Policy provides for a duty to defend against "any covered **Claim** brought against the **Insured**." Instead, the pertinent section of the Policy states that "the **Insurer** shall have the right and duty to defend any **Claim** brought against an **Insured** even if such **Claim** is groundless, false or fraudulent." That means, among other things, that the Insurer shall defend any **Claim** that is at least "potentially" covered under the Policy. HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

13. Denied as stated. HireVue admits that Insuring Agreement E is an Insuring Agreement relevant to this matter, but HireVue denies that it is the only one. HireVue further admits that ACE selectively quotes from the Policy. HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

14. HireVue admits that ACE selectively quotes from the Policy. HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

15.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

16.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

17.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

**The Duty to Defend**

18.     HireVue admits only that the Policy provides that ACE "has the right and duty to defend any **Claim** brought against an Insured even if such **Claim** is groundless, false, or fraudulent." That means, among other things, that ACE is required to defend any Claim that is at least "potentially" covered under the Policy, and not merely one that is "covered."   HireVue further admits that Section IX.A. provides that ACE shall consult and endeavor to reach an agreement with HireVue regarding the appointment of counsel, but that ACE shall retain the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary. HireVue otherwise denies that ACE accurately characterizes the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

**The Policy's Prior and Pending Exclusion**

19.     HireVue admits that the Policy contains a "Pending or Prior Proceedings Exclusion," and that ACE selectively quotes from the Pending or Prior Proceedings Exclusion. HireVue states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms. HireVue denies that the Pending or Prior Proceedings Exclusion precludes coverage for the Claims at issue.

**ACE's Response To Notice And Its Investigation**

20.     HireVue admits that, on or about May 16, 2022, ACE sent a letter accepting the defense of the Deyerler Lawsuit and that ACE purported in that letter to reserve certain rights and defenses.   HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

21.     HireVue admits only that it retained Gerald Maatman of the law firm Seyfarth Shaw as defense counsel in the Deyerler Lawsuit and that ACE stated it had no objection to the retention of Mr. Maatman as defense counsel.  HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.  HireVue further denies that any panel counsel rate limitations are part of the Policy.

22.     HireVue admits only that, in ACE's May 16, 2022 letter, ACE purported to reserve certain rights and defenses.   HireVue also admits that ACE, in that letter, requested various categories of information but denies that all information sought is relevant to the Claim or the

Deyerler Lawsuit. HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

23.     HireVue lacks information regarding ACE's communications with other insurers and, therefore, denies the allegations in paragraph 23. HireVue believes that the "excess layer insurer" learned of the FTC "Complaint" via a press release or similar document. HireVue further denies that any prior "Complaint" filed by the FTC concerned the "same technology," "seemingly," or otherwise, that is at issue in the Deyerler Lawsuit.

24.     HireVue admits only that, on or about March 15, 2023, the excess layer insurer sent an email to HireVue, and that ACE selectively quotes from that correspondence. HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

25.     HireVue admits only that, on or about March 29, 2023, ACE sent an email to HireVue and that ACE selectively quotes from that correspondence. HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

26.     HireVue admits only that, on or about March 29, 2023, HireVue's general counsel sent an email, from which ACE selectively quotes. HireVue states that the email speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

27.     HireVue admits only that, on or about March 31, 2023, the excess layer insurer sent an email to HireVue, from which ACE selectively quotes.  HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

28.     HireVue admits only that, on or about April 4, 2023, the broker of the Policy sent correspondence, from which ACE selectively quotes.  HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

29.     HireVue admits only that, on or about April 4, 2023, ACE sent correspondence, from which ACE selectively quotes.  HireVue states that the correspondence speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

30.     HireVue admits only that, on or about June 22, 2023, HireVue's general counsel sent correspondence, which attached, among other things, the publicly-available EPIC Complaint and the FTC's Civil Investigative Demand.  HireVue does not know, however, whether this version of the EPIC Complaint is identical to the version EPIC submitted to the FTC.  HireVue has no basis either to admit or deny that the FTC's Civil Investigative Demand was "based" on the allegations in the EPIC Complaint.  Those two documents speak for themselves.  HireVue further states that the correspondence also speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the correspondence itself for the full language of the correspondence.

**The EPIC Complaint**

31.     Upon information and belief, HireVue admits only that, on or about November 6, 2019, EPIC published a press release claiming that it filed a complaint with the FTC pertaining to HireVue.  HireVue further admits that ACE purports to selectively characterize some of the allegations in the press release claiming to incorporate a copy of the EPIC Complaint. HireVue, however, denies information and knowledge that the EPIC Complaint identified in the press release was identical to a complaint filed with the FTC. HireVue also denies that ACE accurately characterizes the allegations in the EPIC Complaint.  HireVue further states that the EPIC press release and the attached complaint speak for themselves and that HireVue denies any allegations that are inconsistent therewith.

32.     HireVue admits only that ACE purports to selectively quote from some of the allegations in the EPIC Complaint, but HireVue denies that ACE accurately characterizes the allegations in the EPIC Complaint.  HireVue further states that the EPIC Complaint speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the EPIC Complaint itself for the allegations contained therein.

33.     HireVue admits only that ACE purports to selectively quote from some of the allegations in the EPIC Complaint, but HireVue denies that ACE accurately characterizes the allegations in the EPIC Complaint.  HireVue further states that the EPIC Complaint speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the EPIC Complaint itself for the allegations contained therein.

34.     HireVue admits only that ACE purports to selectively quote from some of the allegations in the EPIC Complaint, but HireVue denies that ACE accurately characterizes all the allegations in the EPIC Complaint.  HireVue further states that the EPIC Complaint speaks for

itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the EPIC Complaint itself for the allegations contained therein.

**The FTC Investigation**

35.     HireVue admits only that, on or about January 14, 2020, the FTC issued a Civil Investigative Demand on HireVue – as opposed to something called an "FTC Investigation" – and that ACE purports to selectively characterize some of the requests in the FTC Civil Investigative Demand. HireVue denies, however, that ACE accurately characterizes all the requests in the FTC Civil Investigative Demand or the scope of the demand.  HireVue further states that the FTC Civil Investigative Demand speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the FTC Civil Investigative Demand itself for an accurate description of the requests contained therein.

36.     HireVue denies that, on or about April 2020, HireVue "decided" to remove visual analysis from its new assessment models.  HireVue admits only that ACE selectively quotes from a blog entry titled, "Industry leadership: New audit results and decision on visual analysis," which was published on HireVue's website on or about January 12, 2021. https://www.hirevue.com/blog/hiring/industry-leadership-new-audit-results-and-decision-on-visual-analysis.  HireVue states that the blog entry speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the blog entry itself for the discussion contained therein.

37.     HireVue admits only that, on or about October 30, 2020, the FTC communicated to HireVue that it had decided not to recommend any enforcement action, and that ACE selectively quotes from that communication.  HireVue denies that the FTC's decision was seven months after HireVue had "decided" to discontinue facial analysis, and denies any inference or implication that

the FTC declined to pursue an enforcement action because HireVue had removed visual analysis from new assessment models. HireVue therefore denies that that there was a connection between the two events as alleged in ACE's complaint.

**COUNT ONE**
**SUBPARAGRAPH a. OF**
**THE PENDING OR PRIOR PROCEEDINGS**
**EXCLUSION HAS BEEN TRIGGERED**

38.     HireVue incorporates its responses to paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     HireVue admits that ACE selectively characterizes wordings contained in the Policy. HireVue further states that the Policy speaks for itself, HireVue denies any allegations that are inconsistent therewith, and HireVue refers to the Policy itself for the Policy's complete terms.

40.     HireVue admits that the Policy contains a "Pending or Prior Proceedings Exclusion," and that ACE selectively quotes from the Pending or Prior Proceedings Exclusion. HireVue states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms. HireVue denies that the either of the two quoted subparagraphs of the Pending or Prior Proceedings Exclusion precludes coverage for the Claims at issue.

41.     HireVue admits only that EPIC issued a press release that purported to include a complaint it filed with the FTC. HireVue admits that FTC issued its Civil Investigative Demand prior to September 1, 2020. HireVue denies any inference or implication that the two events were related to each other or that one was the cause of the other.

42.     Denied.

43.     Denied.

44.     Denied.

## COUNT TWO
## SUBPARAGRAPH b. OF THE
## PENDING OR PRIOR PROCEEDINGS
## EXCLUSION HAS BEEN TRIGGERED

45.     HireVue incorporates its responses to paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46.     HireVue admits that the Policy contains a "Pending or Prior Proceedings Exclusion," and that ACE selectively quotes from the Pending or Prior Proceedings Exclusion. HireVue states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms. HireVue denies that Subparagraph b. of the Pending or Prior Proceedings Exclusion precludes coverage for the Claims at issue.

47.     HireVue admits that **Incident** is defined to include, among other things, a **Cyber Incident.**

48.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

49.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

50.     HireVue admits that ACE selectively quotes from the Policy.  HireVue further states that the Policy speaks for itself, that HireVue denies any allegations that are inconsistent therewith, and that HireVue refers to the Policy itself for the Policy's complete terms.

51.     Denied.

52.     Denied.

53.     Denied.

## RESPONSE TO PRAYER FOR RELIEF

HireVue denies that ACE is entitled to any relief, including such relief as it has prayed for in Paragraphs 1) through 3) of its Prayer.

HireVue denies any allegation not specifically and expressly admitted in Paragraphs 1-53 herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.     The Complaint fails to state a claim against HireVue upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.     The Complaint is barred, in whole or in part, by equitable estoppel.

### THIRD AFFIRMATIVE DEFENSE

3.     The Complaint is barred, in whole or in part, by waiver.

### FOURTH AFFIRMATIVE DEFENSE

4.     The Complaint is barred, in whole or in part, on the ground that ACE would be unjustly enriched.

## HIREVUE'S COUNTERCLAIM WITH JURY DEMAND

Defendant/Counterclaim Plaintiff HireVue, Inc. ("HireVue"), by and through undersigned counsel, brings this Counterclaim against Plaintiff/Counterclaim Defendant ACE American Insurance Company ("ACE") and alleges as follows:

## NATURE OF THE DISPUTE

1.     HireVue asserts these Counterclaims against ACE for declaratory relief and breach of contract pursuant to 28 U.S.C. § 2201.

2.     HireVue is a global human resources technology company that helps prospective employers to fill jobs by offering data-driven technology to engage, screen, assess, interview, and hire talent using one or more of its live or asynchronous video interviewing tool, pre-hire assessments, candidate engagement tools, as well as scheduling solutions. One of HireVue's most popular solutions is its "out-of-the-box" interview platform, which customers can configure to fit their needs by, *e.g.*, electing to add on assessments, scheduling, etc. With its headquarters in South Jordan, Utah, HireVue employs more than three hundred and fifty individuals, approximately 75 of which are based in Utah.

3.     ACE sold HireVue a DigiTech® Enterprise Risk Management Policy, Number D95582187 (the "Policy") to HireVue for the period September 1, 2021 to September 1, 2022 ("Policy Period").  The Policy includes both **Technology Errors and Omissions** coverage and **Cyber, Privacy and Network Security Liability** coverage.  A copy of the Policy is attached to ACE's complaint as Exhibit 2 and is incorporated here by this reference.

4.     ACE markets its DigiTech® Enterprise Risk Management Policy as "[a] distinctive level of technology and cyber protection that only Chubb can offer."  ACE touts the coverage

under the form as "broad and sustainable," and states in its marketing materials that the policy form includes "[i]ndustry-leading coverage designed to address evolving regulatory, legal, and cybersecurity standards and built to consider future change."

5.      ACE initially accepted its duty to defend the lawsuit, *Kristen Deyerler et al. v. HireVue, Inc.*, Case No. 22-cv-01284 (N.D.IL.) (the "Underlying Lawsuit") because it concluded that the allegations contained in the Underlying Lawsuit were within the coverage afforded by the Policy. ACE attached the First Amended Complaint in the Underlying Lawsuit as Exhibit 1 to its complaint. It is incorporated here by this reference.

6.      The Underlying Lawsuit alleges, among other things, violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). As ACE determined, the Underlying Lawsuit contains **Claims** that fall within the Policy coverage, thus triggering ACE's duty to defend.

7.      Despite initially accepting its defense obligation, ACE reversed course and denied its duty to defend the Underlying Lawsuit in February 2024 based on a policy exclusion. It therefore withdrew its defense in breach of the Policy.

8.      HireVue seeks a declaration that the Policy obligates ACE to defend or advance HireVue's Claims Expenses in the Underlying Lawsuit and that the Pending or Prior Proceedings Exclusion does not excuse ACE's defense obligations for the Underlying Lawsuit. HireVue also seeks damages for breach of contract.

**PARTIES**

9.      HireVue is a corporation organized under the laws of Delaware with its principal place of business in Utah.

10.     ACE is an insurance company organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between HireVue and ACE and the amount in controversy exceeds $75,000.

12.     The Court has personal jurisdiction over ACE because the Policy covers HireVue's business operations in Utah and was issued and/or delivered in Utah, and HireVue's principal place of business is Utah.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this suit occurred in this District.

## FACTUAL ALLEGATIONS

**A.     HireVue Purchased Broad Coverage For Privacy Liability Claims**

14.     HireVue purchased the Policy from ACE for the policy period September 1, 2021 to September 1, 2022.

15.     All premiums for the Policy have been paid, and HireVue has complied with all terms of the Policy.

16.     Under the **Technology Errors and Omissions Liability Coverage** in the Policy, ACE agreed that it would "pay **Damages** and **Claims Expenses** by reason of **a Claim** first made against an **Insured** during the Policy Period for a **Technology Incident** which first occurs on or after the Retroactive Date and prior to the end of the Policy Period."

17. Under the **Cyber, Privacy, and Network Security Liability Coverage** in the Policy, ACE agreed that it would "pay **Damages** and **Claims Expenses** by reason of a **Claim** first made against an Insured during the Policy Period for a **Cyber Incident** which first occurs on or after the Retroactive Date and prior to the end of the Policy Period."

18. The term **Cyber Incident** and **Technology Incident** are defined terms in the Policy.

19. The Policy defines **Claim** to include, among other things, any "written demand against any Insured for monetary damages or non-monetary or injunctive relief" and any "civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading."

20. The term **Claims Expenses** is defined to include, among other things, the reasonable and necessary "attorneys' fees, mediation costs, arbitration expenses, expert witness fees, and other fees and costs incurred by the **Insurer**, or by an **Insured** with the **Insurer's** prior written consent, in the investigation and defense of a Claim."

21. Under Section IX of the Policy, ACE further has "the right and duty to defend any **Claim** brought against an Insured even if such **Claim** is groundless, false, or fraudulent." The Policy obligates ACE to "consult and endeavor to reach an agreement with the Insured regarding the appointment of counsel."

22. The Policy contemplates that a single **Claim** can include both covered and uncovered matters. The Policy contains an Allocation provision, which provides in relevant part,

> [i]f a **Claim** includes both covered and uncovered matters, then coverage shall apply as follows: A. **Claims Expenses**: One hundred percent (100%) of **Claims Expenses** incurred by any **Insured** on account of such **Claim shall** be considered covered provided that the foregoing shall not apply with respect to: (i) a **Regulatory Proceeding**; or, (ii) any **Insured** for whom coverage is excluded pursuant to Exclusion III.A.1 or Section XIV, Subsection C.

23.     In recent years, numerous insurance companies, including ACE, have added to liability insurance policies exclusions for claims and/or suits asserted under BIPA.  The Policy, however, does not contain any such exclusion, and it was ACE's intent that allegations relating to BIPA violations would be covered under the Policy and the DigiTech® Enterprise Risk Management Policy form.

**B.     HireVue Is First Named In The Underlying Lawsuit During The Policy Period**

24.     On or about January 27, 2022, the Underlying Lawsuit was first filed against HireVue in the Circuit Court of Cook County, Illinois.  On or about March 10, 2022, the Underlying Lawsuit was removed to federal court in the U.S. District Court for the Northern District of Illinois.

25.     On May 9, 2022, the plaintiffs in the Underlying Lawsuit filed their first amended complaint.

26.     The Underlying Lawsuit alleges, among other things, violations of BIPA based on HireVue's alleged collection of biometric data allegedly without meeting the requirements of BIPA.

27.     HireVue provided ACE with timely notice of the Underlying Lawsuit requesting coverage.

**C.     Nearly Two Years After Agreeing To Defend HireVue, ACE Denied Coverage For The Underlying Lawsuit And Filed This Action**

28.     On May 16, 2022, ACE acknowledged its duty to defend HireVue in connection with the Underlying Lawsuit.  ACE acceded to the retention of Gerald Maatman from the law firm Seyfarth Shaw.  ACE agreed that Mr. Maatman could continue to defend HireVue against the

Underlying Lawsuit after he left Seyfarth Shaw for Duane Morris. Thus, initially, ACE recognized its coverage obligations for the Underlying Lawsuit under the Policy, as ACE admits in its complaint.

29.     On March 15, 2023, one of HireVue's excess insurers requested additional information regarding two matters unrelated to the Underlying Lawsuit: (1) a November 2019 complaint filed by the Electronic Privacy Information Center ("EPIC") with the Federal Trade Commission ("FTC"), and (2) a 2020 Civil Investigative Demand by the FTC (the "FTC CID"). Both matters were publicly reported prior to ACE's sale of the Policy by various media outlets, including the Washington Post, the Wall Street Journal, and the New York Times.

30.     Despite the lack of any connection between these two matters and the Underlying Lawsuit, ACE seized upon the excess insurer's request to justify an expanded inquiry.

31.     In response to ACE's expansive requests, HireVue provided multiple clarifications intended to delineate the distinct nature of the FTC CID and EPIC Complaint from the Underlying Lawsuit.

32.     However, on February 7, 2024 – more than two years after the Underlying Lawsuit was filed and nearly seven months after HireVue's last communication to ACE concerning its requests for documentation – ACE asserted its position that the Pending or Prior Proceedings Exclusion barred coverage for all allegations in the Underlying Lawsuit and stated it would be filing this lawsuit against HireVue.  In addition to the Pending or Prior Proceedings Exclusion, ACE also purported to reserve its right to raise numerous other coverage issues.

33.     The Pending or Prior Proceedings Exclusion is an *exclusion* drafted by ACE. It is markedly different and narrower in scope than "related claims," "related wrongful acts" and other

similar *provisions* used by other insurers to telescope coverage into a single claims-made policy year when multiple claims and/or wrongful acts span multiple policy years.

34.     The Pending or Prior Proceedings Exclusion provides:

> The Insurer shall not be liable for Costs, Damages, or Claims Expenses on account of any Incident or any Claim: . . .
>
> 3. Pending or Prior Proceedings
>
> alleging, based upon, arising out of, or attributable to:
>
> a. any pending or prior litigation, Claim, written demand, arbitration, administrative or regulatory proceeding, or administrative or regulatory investigation filed or commenced against an Insured on or before the applicable Pending or Prior Proceedings Date shown in Item 6 of the Declarations, or alleging or derived from the same or substantially the same fact, circumstance, or situation underlying or alleged therein; or
>
> b. any other Incident whenever occurring which, together with an Incident underlying or alleged in any pending or prior litigation, Claim, written demand, arbitration, administrative or regulatory proceeding, or administrative or regulatory investigation as set forth pursuant to paragraph a. immediately above, would constitute Interrelated Incidents.

35.     Even though ACE initially agreed that the claims in the Underlying Lawsuit are within the terms of the Policy, and that the Underlying Lawsuit triggered its duty to defend, ACE now has denied coverage for all of the allegations in the Underlying Lawsuit based on the Pending or Prior Proceedings Exclusion.

36.     At a minimum, the Pending or Prior Proceedings Exclusion is ambiguous and it must be interpreted against ACE, the drafter. For example, ACE asserts that the exclusion – labeled "Pending or Prior *Proceedings* Exclusion" (emphasis added) – applies to the FTC CID even though the FTC never instituted an actual regulatory "proceeding" against HireVue. A regulatory "proceeding" is an enforcement action. By contrast, a CID is the equivalent of a civil subpoena.

37.     The Pending or Prior Proceedings Exclusion is also subject to a narrow construction against its drafter, ACE. Among other things, any doubt as to whether FTC CID is a Pending or Prior Proceeding as respects the Underlying Lawsuit is resolved *against* ACE. To that end, the FTC CID – even if it was a "Prior Proceeding" – concerned allegedly unfair business practices. The Underlying Lawsuit alleges a lack of notice to supposedly affected persons. Those are not the same things.

## CAUSES OF ACTION
### COUNT I
### (Declaratory Judgment – Duty to Defend)

38.     HireVue incorporates by reference each of the allegations in paragraphs 1 through 37 into this Count I.

39.     ACE has a contractual duty to defend any Claim brought against HireVue that is made and reported during the Policy Period and that potentially falls within the coverage of the Policy.

40.     The Underlying Lawsuit was first filed and reported to ACE during the Policy Period of the Policy.

41.     The Underlying Lawsuit contains allegations against HireVue that fall within the coverage of the Policy.

42.     ACE agrees that the Underlying Lawsuit contains allegations against HireVue that fall within the coverage of the Policy.

43.     The Claims Expenses to date for the Underlying Lawsuit have exceeded the limits of the retention.

44.     The Policy requires ACE to defend HireVue in the Underlying Lawsuit.

45. ACE previously defended HireVue in the Underlying Lawsuit.

46. ACE now wrongly denies its duty to defend the Underlying Lawsuit based on the Pending or Prior Proceedings Exclusion.

47. Accordingly, pursuant to 28 U.S.C. § 2201, there is an actual and justiciable controversy concerning whether ACE has a defense obligation for the Underlying Lawsuit and whether the Pending or Prior Proceedings Exclusions bars even the potential for coverage for the Underlying Lawsuit. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. HireVue seeks a declaration that the Policy requires ACE to defend HireVue or, at a minimum, advance HireVue's Claims Expenses, and that the Pending or Prior Proceedings Exclusion does not excuse ACE's defense obligations in the Underlying Lawsuit.

## COUNT II

### (Breach of Contract)

48. HireVue incorporates by reference each of the allegations in paragraphs 1 through 47 into Count II.

49. The Policy is a valid and enforceable contract.

50. Under the Policy, ACE contractually agreed to defend HireVue.

51. The Underlying Lawsuit contains allegations against HireVue that fall within the coverage of the Policy. ACE agrees that they do.

52. The Claims Expenses to date for the Underlying Lawsuit have exceeded the retention in the Policy.

53. The Policy requires ACE to defend HireVue in the Underlying Lawsuit.

54.     ACE asserts it has no duty to defend HireVue or advance HireVue's Claims Expenses for the Underlying Lawsuit, and therefore it has breached its contractual obligations to HireVue.

55.     HireVue has suffered, and continues to suffer, damages subject to proof at trial because of ACE's breach.

## PRAYER FOR RELIEF

WHEREFORE, HireVue prays for relief as follows:

(i)     Judgment on Count I of this Counterclaim declaring that ACE has a duty to defend HireVue in the Underlying Lawsuit, and declaring the Prior or Pending Exclusion asserted by ACE does not apply;

(ii)    Judgment on Count II of this Counterclaim for breach of contract and awarding damages in an amount to be proven;

(iii)   Pre- and post-judgment interest against ACE; and

(iv)    For such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), HireVue demands a trial by jury on all issues triable by a jury.

Dated April 2, 2024.

        */s/ Brent O. Hatch*

Brent O. Hatch (5715)
Tyler V. Snow (12668)
Hatch Law Group PC

Jeffrey S. Raskin*
Morgan, Lewis & Bockius LLP

*Counsel for HireVue, Inc.*

* Denotes national counsel who will seek pro hac vice admission